IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CEDRIC LETROY BONDS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v.  ) | Civil Action No. 2:13cv542-WKW |
| ) | (WO) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on a *pro se* motion by Cedric Letroy Bonds ("Bonds") to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.  Doc. No. 1.[1]

## I.  BACKGROUND

On November 28, 2011, Bonds pled guilty under a plea agreement to conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & 846.[2]  After a sentencing hearing on July 24, 2012, the district court sentenced Bonds to 154 months in prison.  Bonds did not appeal.

---

[1] Unless otherwise indicated, references to document numbers ("Doc. No.") are to those assigned by the Clerk of Court to pleadings docketed in this action.  References to exhibits (Ex.") are to those filed by the Government with its Response, Doc. No. 6.  Page references, with the exception of references to the presentence investigation report ("PSI") are to those assigned by CM/ECF.

[2] The plea agreement contained a waiver provision whereby Bonds relinquished his rights to appeal and collaterally attack his conviction and sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct.

On July 29, 2013, Bonds filed this § 2255 motion, asserting that:

1. Counsel rendered ineffective assistance by–

    (a) advising him that he would receive a sentence of 10 years in prison if he pled guilty;

    (b) failing to file a motion to suppress;

    (c) failing to argue that his offense level should have been 32 or 34 "instead of career offender 37";

    (d) allowing him to receive a sentence unreasonably disproportionate to the sentences of several of his codefendants; and

    (e) advising him that he could not avoid being prosecuted on the conspiracy charge when other codefendants successfully negotiated pleas to different charges.

2. His guilty plea was unknowing and involuntary because counsel failed to–

    (a) argue against a manager/supervisor role enhancement under the Sentencing Guidelines;

    (b) argue against the amount of drugs attributed to him under the Sentencing Guidelines;

    (c) argue against the career offender enhancement; and

    (d) argue that time he spent in county jail on a writ in Alabama awaiting disposition of his federal case should be credited toward his federal sentence.

Doc. No. 1 at 4-5.[3]

The government contends that none of Bonds's claims of ineffective assistance of counsel entitle him to relief, because Bonds fails to establish deficient performance by counsel and resulting prejudice, as required by *Strickland v. Washington*, 466 U.S. 668 (1984). Doc. No. 6 at 14-23. The government argues that to the extent that Bonds presents a freestanding claim challenging the validity of his guilty plea, such a claim is barred by the waiver provision in his plea agreement whereby he relinquished his rights to appeal and collaterally attack his conviction and sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct. *Id*. at 9-10. The government also maintains that this freestanding claim is procedurally barred because it could have been raised and decided on direct appeal, but was not. *Id*. at 10-12. The government argues that, in any event, the claim is meritless. *Id*. at 12-14. The government contends that to the extent this claim involves allegations of ineffective assistance of counsel, Bonds is entitled to no relief because he fails to establish the deficient performance and resulting prejudice required by *Strickland*.[4] *Id*. at 20-23.

After due consideration of the parties' submissions, the record, and the applicable law,

---

[3] Bonds does little more than list grounds of counsel's alleged ineffective assistance, providing almost no specific facts to support each ground.

[4] Because various sub-claims of ineffective assistance of counsel underlie Bonds's claim challenging the validity of his guilty plea as unknowing and involuntary, the court will address those sub-claims below in this Recommendation. The court's finding that each of those sub-claims of ineffective assistance of counsel lacks merit is dispositive of Bonds's claim that his guilty plea was unknowing and involuntary.

3

the court concludes that Bonds's § 2255 motion should be denied without an evidentiary hearing.  Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*,

## II.  DISCUSSION

### A.  General Standard of Review

Collateral review is not a substitute for direct appeal; therefore, the grounds for collateral attack on final judgments of conviction are extremely limited.  A federal prisoner is entitled to relief under 28 U.S.C. § 2255 only if the district court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum sentence authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Bonds*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428 (1962) (error of law does not provide basis for collateral attack unless

claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice"). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent."

### B. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th Cir. 2006). Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *see Strickland*, 466 U.S. at 687–88 & 694.

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler v. United States*, 218 F.3d 1305, 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id.* (internal quotation marks and brackets omitted). Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not

5

insurmountable – is a heavy one." *Id*.

As noted above, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1. *Counsel's Advice Regarding Length of Sentence*

Bonds cursorily asserts that his counsel rendered ineffective assistance by advising him, incorrectly, that he would receive a sentence of 10 years in prison if he pled guilty.

Doc. No. 1 at 4.

The *Strickland* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A petitioner alleging ineffective assistance in this context must establish that counsel's performance was deficient (i.e., professionally unreasonable) and that counsel's deficient performance "affected the outcome of the plea process." *Hill*, 474 U.S. at 59. To establish prejudice, then, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would ... have pleaded [not] guilty and would ... have insisted on going to trial." *Id*. A mere allegation by a defendant that he would have insisted on going to trial but for counsel's errors is insufficient to establish prejudice; rather, the court will look to the factual circumstances surrounding the plea to determine whether the defendant would have proceeded to trial. *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001); *United States v. Arvantis*, 902 F.2d 489, 494 (7th Cir. 1990); *see also Holmes v. United States*, 876 F.2d 1545 (11th Cir. 1989) (*Hill* does not require a hearing merely because a defendant asserts a claim of ineffectiveness of counsel when the record affirmatively contradicts the allegations).

Here, Bonds does not assert that but for his counsel's allegedly erroneous advice regarding the length of his sentence, he would have pled not guilty and would have insisted on going to trial. Therefore, he fails to establish prejudice under *Hill*, which forecloses the possibility of his obtaining relief on this claim of ineffective assistance of counsel. *Hill*, 474

U.S. at 59. In any event, the record evidence does not support a claim that Bonds was induced to plead guilty by his counsel's advice regarding his sentence.

The transcript of the change of plea hearing reflects that the magistrate judge fully and correctly advised Bonds of the statutory minimum and maximum sentence applicable to his offense (not less than ten years' imprisonment and not more than life[5]). Doc. No. 14-1 at 7. The written plea agreement correctly set forth this same statutory range. Ex. C at 1. The plea agreement contained no provision indicating that Bonds's sentence would be 10 years. At the change of plea hearing, Bonds stated under oath that he and his counsel had reviewed and discussed the plea agreement, and that he understood the terms of the plea agreement. Doc. No. 14-1 at 6. Bonds also affirmed that, other than the terms of the plea agreement, no one had made any promises or assurances to him to get him to plead guilty.[6] *Id*. at 6-7. Bonds

---

[5] *See* 21 U.S.C. §§ 846 & 841(b)(1)(A).

[6] In an affidavit filed with this court, Bonds's trial counsel, James R. Houts, avers:

Mr. Bonds was told that the mandatory minimum sentence for his offense of conviction was ten years. At no time did I represent to Mr. Bonds that he would get ten years if he pleaded guilty. During one consultation, I did state that his best chance of getting close to 10 years would be to be the first person to cooperate and to provide valuable information to the government. I also recall that during one of our final conversations the issue was whether to withdraw certain defense objections to the PSR and a request for a downward variance in exchange for the government increasing its recommended downward departure by an additional point. At that time, Mr. Bonds did express a desire to try and get a sentence as close to the mandatory minimum sentence as possible. Mr. Bonds was disheartened because he felt like the government should have given him additional credit for being the first to cooperate. This conversation occurred after Mr. Bonds had already pleaded guilty.

Doc. No. 4 at 8-9.

acknowledged that he understood his sentence would be determined by a combination of advisory sentencing guidelines, possible authorized departures from those guidelines, and other statutory factors. *Id*. at 8. He affirmed that he and his attorney has discussed how the advisory sentencing guidelines would apply in his case. *Id*. at 8-9.

"[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). "There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Bonds' sworn statement in open court that his guilty plea had not been induced by any promises or assurances outside the plea agreement preclude the relief he seeks. The statement refutes any suggestion that his guilty plea was induced by assurances from his counsel regarding the length of his sentence. Consequently, Bonds is not entitled to relief based on this claim of ineffective assistance of counsel.

### 2.     *Failure to File Motion to Suppress*

Bonds next asserts that his counsel was ineffective for failing to file a motion to suppress. Doc. No. 1 at 4. However, he points to no evidence purportedly subject to suppression and fails even to suggest – much less establish – a basis upon which a motion to suppress evidence would have succeeded.[7] When a petitioner claims that his counsel was

---

[7] Bonds was arrested based on an arrest warrant, which was based on information received from John Early Davis, an individual who transacted drug deals with Bonds. Addressing Bonds's claim, his trial counsel Houts avers:

(continued...)

ineffective for failing to file a motion to suppress evidence, he must establish that he was prejudiced by that failure. *See DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). Here, Bonds's unsupported assertion fails to demonstrate that his counsel's performance in this regard was professionally unreasonable or prejudicial. *Strickland*, 668 U.S. at 687-88. Consequently, he is not entitled to relief based on this claim.

### 3. *Offense Level as Career Offender*

Bonds asserts that his counsel rendered ineffective assistance by failing to argue that his offense level "should have been at 32 or 34 instead of career offender 37." Doc. No. 1 at 4.

Again, Bonds presents a claim with no supporting argument. Bonds was sentenced as a career offender based on two prior felony drug convictions in Georgia, for conspiracy to traffic methamphetamine and trafficking methamphetamine.[8] *See* Presentence

---

[7](...continued)
I am unaware of any grounds that could have been successfully asserted in a motion to suppress. One of the difficulties in this case arose out of the fact that the evidence against Bonds was primarily testimony of cooperating individuals, including as to the alleged drug amounts. As for the physical evidence, Mr. Bonds did not have standing to seek suppression of Mr. Davis's cell phone and related data, which included geocoded metadata attached to digital photographs that corroborated Mr. Davis's statement about traveling to Atlanta, Georgia to purchase methamphetamine from Alexi Orr [Bonds's codefendant]. Government evidence regarding money transfers through "Green Dot" cards was also not subject to any attack by Bonds on constitutional grounds. Again, I am unaware of any valid grounds for the suppression of any evidence marshaled against Mr. Bonds.

Doc. No. 4 at 8.

[8] Under § 4B1.1 of the Sentencing Guidelines, a defendant is classified as a career offender
(continued...)

Investigation Report ("PSI") at 14, ¶ 49. Bonds makes no argument that he was incorrectly classified as a career offender. Under U.S.S.G. § 4B1.1(b) of the career offender guideline, if the defendant's offense level from the table provided in that section is greater than the offense level otherwise calculated for the defendant, the offense level from the table shall apply to the defendant. U.S.S.G. § 4B1.1(b). Because the statutory maximum sentence for Bond's offense was life, *see* 21 U.S.C. § 841(b)(1)(A), his offense level under the table in § 4B1.1(b) was life. U.S.S.G. § 4B1.1(b)(A). His otherwise calculated offense level (i.e., his adjusted, non-career-offender offense level) was 35.[9] *See* PSI at 14, ¶ 48. Because his career-offender offense level of 37 under § 4B1.1(b)(A) was greater than his otherwise calculated offense level, the offense level of 37 was correctly applied to him.[10]

Consequently, Bonds fails to show that his counsel was ineffective for failing to argue

---

[8](...continued)
if he was at least eighteen years old at the time the defendant committed the instant offense, the instant offense was either a crime of violence or a controlled substance offense, and the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. *See* U.S.S.G. § 4B1.1(a).

[9] In the PSI, Bonds's adjusted offense level of 35 was predicated on a base offense level of 32, based on the drug amounts attributed to him (*see* U.S.S.G. § 2D1.1(a)(5), (c)(4)), and a three-level manager/supervisor role enhancement (*see* U.S.S.G. § 3B1.1(b)). *See* PSI at 14, ¶¶ 43-48.

[10] Ultimately, and pursuant to his plea agreement, Bonds's career-offender offense level was reduced by three levels for acceptance of responsibility (*see* U.S.S.G. § 3E1.1(a) & (b)) and by an additional five levels for substantial assistance based on the government's motion for downward departure under U.S.S.G. § 5K1.1. This produced a final offense level of 29. As a career offender, it was mandatory that he be assigned a criminal history category of VI. *See* U.S.S.G. § 4B1.1(b). The final offense level of 29 combined with the criminal history category of VI yielded a guidelines sentencing range of 151 to 188 months. The 154-month sentence imposed by the district court was toward the low end of the guidelines sentencing range.

that his offense level should have been 32 or 34. Counsel cannot be ineffective for failing to argue a meritless issue. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992). This claim does not entitle Bonds to relief.

### 4. *Disproportionate Sentence*

Bonds claims that his trial counsel rendered ineffective assistance by allowing him to receive a sentence unreasonably disproportionate to the sentences of three of his codefendants. Doc. No. 1 at 4. He alleges that codefendant Eli Peretz was ultimately charged with and convicted of misprision of a felony, for which he received only an 18-month sentence; that codefendant Brandi Michelle Butler "had a similar background to [his] but yet she was released in May 2013"; and that codefendant Alexa Orr "is not in the system." *Id*.

Addressing this claim in an affidavit filed with the court, Bonds's trial counsel James R. Houts avers:

> Having extensively reviewed the discovery provided by the government, I am not surprised Peretz was permitted to plead guilty to misprision of a felony. Mr. Bonds and I discussed the differences between his case and that of Peretz. My recollection is that Mr. Bonds indicated that he understood that he was in a more vulnerable position than Peretz because of the nature of evidence available against Bonds.
>
> As to the other co-defendants, Mr. Bonds indicated to me an understanding that his sentence would be different from his co-defendants inasmuch as his criminal history category would be VI. Although Bonds cites the alleged disparity between his sentence and that of his co-defendants in support of his petition, it was Bonds's much greater exposure under the U.S.S.G. due to his criminal history category that I used to stress the need for Bonds to cooperate before someone with less exposure agreed to cooperate with the government.

12

>Again, Mr. Bonds expressed to me an understanding that his criminal history category was a major consideration unique to his case.

Doc. No. 4 at 3-4.

Under 18 U.S.C. § 3553(a)(6), a district court is required "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." In considering disproportionality, it is important to compare defendants who are similarly situated. *See United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009). "That requires identifying (1) a specific defendant, (2) with a similar record to the defendant being sentenced, (3) who has been found guilty of similar criminal conduct." *United States v. Espinoza*, 550 Fed. App'x 690, 694 (11th Cir. 2013).

Bonds's sentence may have been greater than the sentences of his codefendants. However, his sentence was determined in large part because he qualified as a career offender based on his criminal history. For Bonds's argument to be accepted, one must compare his sentence to his codefendants who were classified as career offenders. This court knows of no such codefendants, and Bonds offers the court no such codefendant who fits that description. Peretz, Butler, and Orr were not career offenders. Also not a career offender was Cody Howard, a codefendant Bonds does not cite in his argument. Howard received a sentence of 108 months in prison. *See* Case No. 2:11cr75-WKW, Doc. No. 279. Further, Bonds does not show that his participation in the conspiracy was similar to that of coconspirators Butler and Orr, who received substantially lesser sentences. The evidence of Peretz's involvement in the conspiracy was relatively weak, so he was allowed to plead guilty

to a misprision of a felony. Therefore, Bonds also fails to demonstrate that he was found guilty of criminal conduct similar to that of the codefendants who received lesser sentences.

Consequently, Bonds cannot establish that his counsel was ineffective for allowing him to receive a sentence unreasonably disproportionate to the sentences of similarly situated codefendants.[11] This claim is due to be denied.

### 5.     *Prosecution on Conspiracy Charge*

Bonds asserts that his counsel rendered ineffective assistance by advising him that he could not avoid being prosecuted on the conspiracy charge when other codefendants successfully negotiated pleas to different charges. Doc. No. 1 at 4.

Three of Bonds's four codefendants entered guilty pleas to the conspiracy charge in the indictment. Only codefendant Eli Peretz pled guilty to a lesser charge, and, as noted above, the evidence of Peretz's involvement in the conspiracy was comparatively weak. Bonds fails to demonstrate deficient performance by counsel here or resulting prejudice.

### 6.     *Manager/Supervisor Role Enhancement*

Bonds contends that his counsel was ineffective for failing to argue against a manager/supervisor role enhancement under the Sentencing Guidelines, U.S.S.G.

---

[11] Arguably, "reduc[ing] a sentence because of a perceived disparity between the sentences of one defendant and that of his co-defendant in the same case creates a new and unwarranted disparity between that first defendant's sentence and the sentences of all the defendants nationwide who are similarly situated." *United States v. Thompson*, 218 Fed. App'x 413, 416-17 (6th Cir. 2007).

§ 3B1.1(b).[12]  Doc. No. 1 at 5.

Bonds's trial counsel Houts initially objected to inclusion of the manager/supervisor enhancement, but abandoned the claim when it became apparent that Bonds was subject to being sentenced as a career offender.  As noted above in Part II.B.3 of this Recommendation, the PSI's calculation of Bonds's adjusted offense level, which included the manager/supervisor enhancement, was 35.  Bonds's offense level as a career offender under § 4B1.1(b)(A) of the guidelines was 37. Thus, the career-offender offense level of 37 "trumped" Bonds's adjusted offense level, and counsel had nothing to gain by pursuing an objection to the manager/supervisor enhancement, which was a factor only in the calculation of Bonds's adjusted offense level and played no part in his career-offender offense level.  Counsel cannot be ineffective for failing to pursue a meritless claim.  *Chandler*, 240 F.3d at 917; *Winfield*, 960 F.2d at 974. Bonds does not demonstrate deficient performance by counsel or resulting prejudice. Therefore, this claim entitles him to no relief.

### 7.   *Attributed Drug Amounts*

Bonds also contends that his counsel was ineffective for failing to argue against the amount of drugs attributed to him under the Sentencing Guidelines as relevant conduct, U.S.S.G. § 1B1.3.  Doc. No. 1 at 5.  However, for the same reason that nothing could be gained by pursuing a challenge to the manager/supervisor role enhancement, nothing could

---

[12] Section 3B1.1(b) calls for a three-level increase in a defendant's offense level when the defendant managed or supervised criminal activity that involved five or more participants or was otherwise extensive.  U.S.S.G. § 3B1.1(b).

15

be gained by challenging the drug amounts attributed to Bonds as relevant conduct. Such drug amounts were a factor only in the calculation of Bonds's adjusted offense level and played no part in determining his career offender offense level. As noted, his career offender offense level trumped his adjusted offense level. An objection to attributed drug amounts could not have affected the career offender offense level applied to Bonds. As a result, Bonds fails to demonstrate deficient performance by counsel or resulting prejudice, and this claim entitles him to no relief.

### 8.  *Career Offender Enhancement*

Bonds asserts that his counsel was ineffective for failing to argue against the career offender enhancement in his case. Doc. No. 1 at 5. As the government correctly notes, Bonds offers no support for this claim, and he does not contest the validity of the prior felony drug convictions used to classify him as a career offender. Bonds fails to demonstrate deficient performance by counsel or resulting prejudice. Consequently, this claim entitles him to no relief.

### 9.  *Jail Credit*

Bonds claims that his counsel was ineffective for failing to argue that time he spent in county jail on a writ in Alabama awaiting disposition of his federal case should be credited toward his federal sentence. Doc. No. 1 at 5.

Bonds was serving a state sentence in Georgia when the federal indictment issued in the instant matter. The federal prosecutor in the Middle District of Alabama sought and

obtained a writ of *habeas corpus ad prosequendum* to have Bonds brought to this district to be tried on the federal charge. Bonds apparently wants credit against his federal sentence for time he spent in an Alabama county jail awaiting disposition of his federal case.

>Addressing Bonds's allegation of ineffective assistance, trial counsel Houts states:
>
>I told Mr. Bonds that because he was in Alabama on a writ of *habeas corpus ad prosequendum*, I did not know of any way to arrange for credit for his time served awaiting disposition of his federal case. I further explained to Mr. Bonds that if he were not in Alabama he would be in the penitentiary in Georgia, and thus his freedom of movement was not necessarily being restricted. I inquired with the Federal Defender's Office for the Middle District of Alabama and several other CJA panel attorneys to determine if there was any way I could get Mr. Bonds credit for his pre-trial time spent on the government's writ. No one I spoke to knew of any way to accomplish such a feat. I informed Mr. Bonds that I did not know of any way to get him credit for time served in Alabama when he was serving an active sentence in Georgia.

Doc. No. 4 at 10-11.

Although federal authorities took temporary custody of Bonds pursuant to the writ of *habeas corpus ad prosequendum* on the federal drug charges, the State of Georgia still retained primary custody of him. *See, e.g., Esquivel-Torres v. Scibana*, 2006 WL 2373203, at *3 (W.D. Okla. Aug. 14, 2006). Because the State of Georgia maintained primary custody and federal authorities obtained only temporary custody under the writ of *habeas corpus ad prosequendum*, Bonds remained in custody of the Georgia authorities during the time he was transferred for prosecution on federal charges. *Id*. Under 18 U.S.C. § 3585(b), a federal prisoner cannot be given credit on his federal sentence for time credited to another sentence, because such would constitute "double counting." *See United States v. Wilson*, 503 U.S. 329,

337 (1992); *Johnson v. Wise*, 2010 WL 3306920, at *5-6 (S.D. Ala. Jul. 13, 2010). Bonds neither asserts nor demonstrates that he did not receive credit from Georgia authorities against his Georgia sentence while he was in Alabama on the writ of *habeas corpus adprosequendum* awaiting disposition of his federal case. Consequently, he cannot show that his counsel was ineffective for failing to argue that time he spent in an Alabama county jail awaiting disposition of his federal case should be credited against his federal sentence.[13]

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Bonds be DENIED with prejudice, as the claims therein entitle him to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation **[on or before September 3, 2015.** A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on

---

[13] The actual calculation of any jail credit that Bonds is entitled to receive against his federal sentence would be done by the Federal Bureau of Prisons ("BOP") and not by the district court at sentencing. The mechanism for Bonds to challenge such a calculation, after exhaustion of any available BOP administrative remedies, would be through a petition for writ of habeas corpus under 28 U.S.C. § 2241, not through a § 2255 motion. *See, e.g., Johnson v. Wise*, 2010 WL 3306920, at *4 (S.D. Ala. Jul. 13, 2010).

appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, this 20th day of August, 2015.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE